IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

LARRY COLEMAN,
Plaintiff

v.                              CAUSE NO.:   3:18-cv-218-HTW-LRA

KOCH FOODS OF MISSISSIPPI,
LLC; KOCH MEAT CO, INC.,
Defendants

## COMPLAINT

COMES NOW the Plaintiff, by and through the undersigned counsel, and for this his Complaint would state as follows:

### PARTIES, JURISDICTION, AND VENUE

1. The Plaintiff is an adult resident of Simpson County, Mississippi.

2. Defendant Koch Foods of Mississippi is a Mississippi limited liability corporation with its principal place of business in Scott County, Mississippi. It may be served with process through its registered agent, CT Corporation System, 645 Lakeland East Drive, Suite 101, Flowood, MS 39232. Defendant Koch Meat Co., Inc., is the corporate parent of Koch Foods of Mississippi and is an Illinois corporation. It may be served with process through its registered agent, Thomas R. Wechter, 190 South LaSalle St., Suite 3700, Chicago, IL 60603.

3. This Court has jurisdiction over the subject matter of this lawsuit because all claims arise under a federal statute, thus granting the Court federal-question jurisdiction under 28 U.S.C. § 1331.

4. This Court has jurisdiction over Defendant Koch Foods of Mississippi because it is a Mississippi corporation with its principal place of business in Mississippi. This Court has

jurisdiction over Defendant Koch Meat Co., Inc., through the Mississippi Long Arm Statute, Miss. Code Ann. § 13-3-57.

5. Venue is proper in this Court because the acts and events giving rise to the claims occurred within the jurisdiction of this Court.

6. Plaintiff properly exhausted his administrative remedies. This suit is filed within ninety days of receipt of a right to sue letter from the EEOC.

<u>GENERAL ALLEGATIONS OF FACT</u>

7. In or around November 2016, Coleman was hired as an employee by Defendant Koch Foods.

8. At all times relevant to this lawsuit, Coleman satisfactorily completed his work duties.

9. However, Coleman worked a second shift, and the workers on the overnight shift were used to his predecessor doing part of their jobs.

10. These night shift workers complained to Koch Foods management that Coleman was not completing his assigned work tasks.

11. After investigation, management discovered that the tasks the night-shift workers wanted Coleman to perform were not part of his job duties.

12. Nevertheless, management told Coleman to meet the night-shift workers' expectations, even though that was not part of his job duties.

13. The night-shift workers and management were all white.

14. Coleman is African-American.

15. Due to the night-shift workers' complaints, Koch Foods management disciplined and ultimately terminated Coleman on February 23, 2017.

16. This termination was motivated in part by Coleman's race and color.

17. Similarly-situated white workers were not required to perform the tasks Coleman was asked to do, nor were they disciplined for their failure to do so.

18. Coleman would routinely work in excess of forty hours per week.

19. Koch Foods management would alter his time cards to deny him payment for hours in excess of forty, both straight time and overtime.

20. Coleman's regular hourly rate was $13.25/hour.

21. Coleman would protest the alterations to his time card.

22. The discipline and firing of Coleman was motivated in part by his complaints regarding the alterations of his time card.

23. Similarly-situated employees who did not complain about their time cards were neither disciplined nor fired.

24. On February 17, 2017, Koch Foods management found a damaged food truck in the loading bay where Coleman worked.

25. Management accused Coleman of damaging the truck.

26. Further investigation demonstrated that Coleman was not responsible for damaging the truck.

27. Management then accused Coleman of different, unrelated misconduct in January 2017.

28. Management claimed that this misconduct occurred during Coleman's probationary period and terminated him.

29. In fact, this explanation was a pretext for the discriminatory animus management bore Coleman.

<u>COUNT I - RACE DISCRIMINATION</u>

30. The foregoing is incorporated as if recited verbatim herein.

31. Koch Foods discriminated against Coleman on the basis of race by disciplining him more harshly than similarly-situated white workers, including terminating him.

32. Due to this discrimination, Coleman has suffered economic damages, including lost wages, benefits, and other economic damages in an amount to be proven at trial; noneconomic compensatory damages in an amount to be proven at trial; and incurred attorney's fees.

33. Koch Food's discrimination is sufficiently egregious to justify the imposition of punitive damages.

34. Koch Meat ratified and benefited from Koch Food's discrimination in a way to justify holding it jointly and severally liable.

## COUNT II: FLSA VIOLATIONS

35. The foregoing is incorporated as if recited verbatim herein.

36. Koch Foods routinely and as a matter of policy altered time cards to prevent the payment of hours worked.

37. Coleman routinely worked hours in excess of those reflected on his time card and routinely had his time card altered.

38. Coleman brings this lawsuit pursuant to 29 U.S.C. § 216(b) as a collective action on behalf of the following class of potential opt-in litigants: all individuals employed within the last three years by Defendants, who were paid a regular hourly rate without receiving compensation at their regular rate for all hours worked during a single workweek, in a class to be defined by the Court.

39. Coleman avers that such individuals are "similarly-situated" for the purposes of this FLSA collective action because said individuals were and are subject to a common policy, plan, and design that stretches across Koch Foods' operations, departments, and locations.

40. The common policy at issue—Koch Foods' management altering time cards—was, upon information and belief, uniformly applied to all members of the putative class.

41. The work of Coleman and putative Plaintiffs was directed and controlled by Koch Foods.

42. Coleman is situated similarly to a number of current and former employees of Koch Foods who work or have worked in similar non-exempt positions during the three years immediately preceding the filing of this lawsuit.

43. The putative Plaintiffs have the same or closely similar job duties as Coleman and all Plaintiffs were paid by the Defendants in the same manner in violation of the FLSA.

44. Accordingly, Coleman is an appropriate representative of all Plaintiffs employed by Koch Foods who were subjected to the common policy, plan and design to violate the FLSA.

45. Based upon Defendants' uniform practice and pay system, Plaintiffs who worked hours in excess of forty (40) per week were not paid overtime based upon one and one half times their regular rate of pay.

46. Defendant Koch Foods is and, at all times hereinafter mentioned, was an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. §203(s)(1)(A) in that said enterprise at all times hereinafter mentioned had employees engaged in commerce or in the production of goods for commerce, or employees

handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that said enterprise had an annual gross volume of sales made or business done of not less than $500,000. Specifically, Defendant Tri-State Enterprises LLC has annual sales of more than $500,000 during the relevant time period.

47. Coleman therefore asks that the Court certify a collective action under 29 U.S.C. § 216(b) and issue notice to all potential opt-in plaintiffs.

48. Due to Koch Foods' violation of the minimum wage and maximum hour provisions of the Fair Labor Standards Act, Coleman and putative Plaintiffs have suffered lost wages in an amount to be proven at trial.

49. Coleman and putative Plaintiffs also request liquidated damages in a like amount to their lost wages and attorney's fees and costs.

50. Koch Meat ratified and benefited from Koch Food's discrimination in a way to justify holding it jointly and severally liable.

## COUNT III: FLSA RETALIATION

51. The foregoing is incorporated as if recited verbatim herein.

52. Coleman, and upon information and belief, some or all putative collective-action plaintiffs, protested the alteration of their time cards.

53. Coleman, and upon information and belief, some or all putative collective-action plaintiffs, were disciplined more harshly or terminated on the basis of their protests against the alteration of their time cards.

54. Because of the retaliatory action taken by Koch Foods, Coleman, and upon information and belief, some or all putative collective-action plaintiffs, have suffered lost

wages, benefits, and other economic damages in an amount to be proven at trial; noneconomic compensatory damages in an amount to be proven at trial; and incurred attorney's fees and costs.

55. Koch Foods' actions are egregious enough to justify the imposition of punitive damages.

56. Koch Meat ratified and accepted the retaliatory conduct of Koch Foods such that joint and several liability is proper.

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests the following relief:

a) Declaratory judgment that Koch Foods and Koch Meats are jointly and severally liable for all damages proximately caused by their wrongful conduct.

b) Declaratory judgment that Koch Foods discriminated against Coleman on the basis of race.

c) Declaratory judgment that Koch Foods violated the Fair Labor Standards Act.

d) Declaratory judgment that Koch Foods retaliated against Coleman.

e) Lost wages for the hours of work Coleman or other similarly-situated plaintiffs worked for which he was not properly compensated.

f) Lost wages for time since Coleman's termination to the date of judgment.

g) Lost benefits for time since Coleman's termination to the date of judgment.

h) Liquidated damages in the same amount as Coleman's or other similarly situated plaintiffs' lost wages for the hours of work he worked for which he was not properly compensated.

i) Noneconomic compensatory damages in an amount adequate to properly compensate

Coleman for his pain and suffering, emotional anguish, and other noneconomic damages.

j) Punitive damages in an amount adequate to deter future misconduct, but in no event

greater than nine times the total compensatory damages.

k) Pre-judgment and post-judgment interest.

l) Reasonable attorney's fees and costs.

m) Trial by jury.

RESPECTFULLY SUBMITTED,

**/s/ Matthew Reid Krell**
Matthew Reid Krell (MSB# 103154)
The Law Offices of Matthew Reid Krell
P.O. Box 71504
Tuscaloosa, AL 35407
662-469-5342
matthewrkrell@gmail.com
Attorney for Plaintiffs