IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | | |
|---|---|---|
| LARRY COLEMAN, on his own behalf and on behalf of others similarly situated | | PLAINTIFF |
| V. | | CIVIL ACTION NO. 3:18-CV-00218-HTW-LRA |
| KOCH FOODS OF MISSISSIPPI, LLC; KOCH MEAT CO., INC. and JOHN DOES 1-10 | | DEFENDANTS |

## DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S FLSA CLAIMS

Scott W. Pedigo (spedigo@bakerdonelson.com)
D. Sterling Kidd (skidd@bakerdonelson.com)
R. Christopher White (rcwhite@bakerdonelson.com)
Baker, Donelson, Bearman,
   Caldwell & Berkowitz, P.C.
100 Vision Drive, Suite 400
Jackson, MS 39211
Telephone: (601) 351-2400

## TABLE OF CONTENTS

INTRODUCTION .................................................................................................................1

STATEMENT OF FACTS ....................................................................................................1

    I.    Coleman's Work Clothing. ........................................................................................1

    II.    The DC's Collective Bargaining Agreements. .........................................................5

    III.    Coleman's FLSA Claims and the Court's CMO. .....................................................6

SUMMARY JUDGMENT STANDARD ..............................................................................7

ARGUMENT .........................................................................................................................7

    I.    Coleman's FLSA Claim Fails Because Getting Dressed and Undressed for Work Was Not Integral and Indispensable to His Principle Activities. .............................7

    II.    The DC's CBAs Do Not Require Compensation For Getting Dressed and Undressed, So They Preclude Coleman's Claim. ...................................................10

CONCLUSION ....................................................................................................................12

# INTRODUCTION

Coleman alleged in his Amended Complaint that Koch Foods of Mississippi, LLC ("Koch Mississippi") and Koch Meat Co., Inc. ("Koch Meat") (collectively, "Defendants") violated the Fair Labor Standards Act ("FLSA") because they permitted him to put on and take off clothing that he wore for work off the clock. He also alleged that Defendants retaliated against him in violation of the FLSA for allegedly complaining about the altering of timecards. Coleman is wrong. But he has no viable claim under the FLSA because none of the clothing that he wore for work was required and he could put on and take off the clothing at home. Therefore, the activity is not compensable as a matter of law. Moreover, even if the activity was compensable, Defendants are entitled to judgment on the claim because the Collective Bargaining Agreements ("CBA") in place where he worked did not require that the time be paid. Finally, Coleman conceded his FLSA retaliation claim. For these reasons, the Court should enter judgment against Coleman on his FLSA claims brought under Counts II and III in the Amended Complaint.

# STATEMENT OF FACTS

### I.   Coleman's Work Clothing.

Coleman's FLSA claims relate to his work for about six months at Koch Mississippi's distribution center in Morton, Mississippi (the "DC").[1] The DC has various departments based on the different work areas in the facility. The DC has four work areas pertinent here, each with its own temperature setting: (1) the dock; (2) the controlled vacuum pack area ("CVP"); (3) the

---

[1] Barely six months after he started working at the DC, Coleman abandoned his job on November 7, 2016 without notice and without giving any reason. Koch Mississippi terminated his employment on November 11, 2016. (November 11, 2016 Personnel Action Form, attached to Defendants' Motion as Exhibit "A") Koch Mississippi gave Coleman a second chance. Shortly after abandoning his job at the DC, Coleman applied for and was hired as a driver at Koch Mississippi's Morton, Mississippi slaughter plant. (November 14, 2016 Personnel Action Form, attached to Defendants' Motion as Exhibit "B") During his deposition, Coleman's counsel explained that Coleman is not pursuing any FLSA claim for his time at the slaughter plant. (Coleman Dep. 65;10-14, attached to Defendants' Motion as Exhibit "C") Therefore, Coleman's work at the slaughter plant is not at issue in the present Motion.

freezer; and (4) the "blast." (Declaration of Bob Hudson, attached to Defendants' Motion as Exhibit "D") The dock is kept at a temperature of approximately 34°, the CVP is kept at approximately 28°, the freezer is kept at approximately -5°, and the blast is kept at approximately -9°, but with an added wind chill factor. (Hudson Dec., ¶ 3, Ex. D) Coleman worked in the dock and the CVP. (May 27, 2016 Personnel Action Form, attached to Defendants' Motion as Exhibit "E"; Coleman Dep. at 7:9-13, 8:10-12, Ex. C)[2]

Coleman and the other dock/CVP employees were not required to wear any particular type of clothing and certainly were not required to wear protective equipment in the traditional sense. (Coleman Dep., 23:20-24:12; 21:23-22:4, Ex. C) They were permitted, but not required, to purchase and wear a freezer suit manufactured by RefrigiWear. (Coleman Dep. 23:20-24:17, Ex. C) Coleman opted for the freezer suit, but he could wear it to and from work. (Coleman Dep. 25:4-6, 25:16-26:25, Ex. C); Hudson Dec. ¶ 5, Ex. D)[3]

With respect to the first point, Coleman explained that he was free to choose what he wore for his work:

> Q. But you would wear what you called RefrigiWear coveralls and you would wear gloves, either cotton or the wool gloves?
>
> A. Correct.
>
> Q. All right. Now describe for me what you mean by these RefrigiWear coveralls. Can you tell me what you mean by that. What are those?
>
> A. Well, they were your basic set of coveralls with the zipper that came all the way down to the wrist and all the way down to the feet.
>
> * * *

---

[2] Plaintiff also occasionally filled-in in temporary capacity as a truck driver moving trucks around outside. (Coleman Dep. 8:8-12; 12:15-21, Ex. C)

[3] There is a locker room at the DC, and employees are permitted to rent a locker and get dressed in the locker room. (Coleman Dep. 54:18-55:12, Ex. C) They are, however, not required to, and even employees who rented a locker were permitted to wear their clothes to and from work. (*Id.* 24:18-25:6, Ex. C)

4828-4474-4836
2016061-000217

Q. Was that something you put on over your street clothes?

A. Correct.

Q. Did some people – well, you mentioned that some people might order something else but you had this RefrigiWear coverall. Did some people wear other things other than this coverall clothing that you're talking about or this other suit that other people would purchase?

A. Yes. Basically whatever kept you warm.

\* \* \*

Q. Okay. So in the CVP room the people that worked in there could wear whatever they wanted to keep them warm. They didn't have particular items they had to wear?

A. No.

Q. So they could wear whatever they wanted?

A. (Nodded head affirmatively.)

Q. That's a yes?

A. Yes.

Q. Okay. If they weren't wearing coveralls like you wore or the other suit that you described, what type of items would people wear to keep them warm?

A. I can give you an example.

Q. Sure.

A. Some of the new guys coming out of the temp service who hadn't ordered a suit yet, they wore their regular street clothes: jeans, boots, jacket, hat and gloves that were provided.

Q. I'm glad you mentioned the hat again. What type of hat are you referring to when you say you wore a hat?

A. It was also a RefrigiWear hat, but just a skull cap I guess would be the correct term.

\* \* \*

Q. *And I should have mentioned this or asked this with respect to the CVP room, but jumping back to that job while you were working in the CVP room,*

3

> *were the cold weather coveralls, was that required or if you could take it [home,] could you just not wear those?*
>
> A. *It was kind of up to you.*
>
> Q. *Okay. What about the hat? Was that up to you?*
>
> A. *The same thing.*
>
> Q. *How about the gloves?*
>
> A. *The same thing. It's up to you.*

(Coleman Dep. 21:6-15; 21:20-22:4; 23:20-24:17; 28:15-24, Ex. C) (emphasis added) The same was true when he would fill-in as a spot driver. He wore gloves by choice to keep his hands from getting dirty and could also slip on a reflective vest that was hanging in the truck for whomever drove. (Coleman Dep. 27:8-28:14) Of course, if he chose to put those on, he would already be working on his paid shift. (Coleman Dep. 46:2-47:16)

Simply put, Coleman was not required to wear any specific type of clothing to perform his job.

Coleman also confirmed that he could wear his clothes to and from work:

> Q. Was [the hat] something that you could wear in from home, like arrive with it or did you –
>
> A. Yes.
>
> Q. On the coveralls, could you come in with those from home as well?
>
> A. Correct.
>
> \* \* \*
>
> Q. If you wanted to could you wear your coveralls home at the end of the day?
>
> A. If I wanted to, yes.
>
> Q. I guess at the end of the day while you worked in the CVP room if you wanted to you could wear the hat and gloves home if you wanted to?
>
> A. Correct.

4

> Q. Let's jump back to the beginning of the day when people are coming to work. Did some people, in fact, wear some of their cold weather gear in from home as opposed to keeping them in a locker like you did?
>
> A. Yes.
>
> Q. At the end of the day did some people wear their cold weather clothing home as opposed to keeping them in a locker like you did?
>
> A. Yes.

(Coleman Dep. 24:18-23; 25:16-26:6, Ex. C) In addition to conceding that some of his co-workers wore their clothes to and from work, Coleman explained that he too wore some of them (his boots) to and from work, although he chose to leave most of the outfit in a work locker. (Coleman Dep. 26:17-21, Ex. C)[4]

## II. The DC's Collective Bargaining Agreements.

During Coleman's six month stint at the DC, two CBAs that the United Food & Commercial Workers, Local 1529, negotiated on his behalf governed the terms of his employment. The first CBA had an effective date of June 4, 2013 and expired on June 4, 2016, and the second CBA had an effective date of June 5, 2016, and will expire on June 8, 2019. (June 4, 2013 CBA, at 1, attached to Defendants' Motion as Exhibit "F;" June 5, 2016 CBA, at 1, attached to Defendants' Motion as Exhibit "G") Neither CBA obligated Defendants to pay employees for time spent putting their clothes on or taking their clothes off. (*Id.*)

---

[4] Ultimately, whether Coleman wore his clothes to and from work or kept them in his locker is immaterial. Summary judgment is appropriate because he had the option of wearing the items to and from work. Also, Coleman testified that he had 10 minutes after the start of his shift at 11p.m. before he had to be at his workstation ready for work and could put on his clothes during that time as well. (Coleman Dep. 36:6-9, Ex. C) At the end of the shift, he could wear his clothing home if he wanted to, or sometimes he would get undressed and then clock-out. (Coleman Dep. 45:1-46:1, Ex. C) Similarly, during the meal period, Coleman could keep all of his clothes on in the break room if he wanted to, and he clarified in his deposition that he was not seeking to recover for any time during his meal period. (Coleman Dep. 44:11-16; 68:13-69:7, Ex. C)

### III. Coleman's FLSA Claims and the Court's CMO.

In his Amended Complaint, Coleman alleged that he was required to wear "personal protective equipment" and that Koch Mississippi "did not require employees to clock in [before] donning their personal protective equipment, nor did it require employees to doff personal protective equipment [before] clocking in." (Am. Compl. ¶ 8-9, Dkt. No. 3) Coleman also alleged that he "routinely would don his personal protective equipment before clocking in and doff his personal protective equipment after clocking out" and that Koch Mississippi did nothing to prevent that. (*Id.* ¶¶ 11, 13) Under Count II, he alleged that this alleged conduct violated the FLSA because he "worked" in excess of forty (40) hours per week and was not paid overtime for the time he spent donning and doffing the items he wore and also alleged that he was entitled to bring his action as a collective action on behalf of all similarly situated employees. (*Id.* ¶¶ 45-62)

Coleman also alleged that Koch Mississippi management "would alter his time cards to deny him payment for hours in excess of forty, both straight time and overtime." (*Id.* ¶ 27) He alleged that he protested the alleged alterations and was disciplined and ultimately terminated because of his protests. (*Id.* ¶ 30) Under Count III, Coleman alleged that the purported retaliation violated the FLSA. During Coleman's deposition, however, he conceded the retaliation claim as mistaken. (Coleman Dep. ¶65:19-67:4, Ex. C)

In its Case Management Order, the Court established an initial discovery period on the issue of class certification and set a deadline of December 31, 2018, for Coleman to file a motion to conditionally certify his FLSA claims as a collective action. (CMO, Dkt. No. 9) Coleman elected not to file one.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper when, viewing the evidence most favorably to the nonmoving party, "the pleadings, depositions, . . . and admissions on file, together with any affidavits," show there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Summary judgment allows the parties and the judiciary to obtain a "just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Once the moving party's initial burden is satisfied, the burden shifts to the nonmoving party to produce specific and "significant probative evidence" of a genuine issue of material fact. *Id.*

Summary judgment should be granted where a plaintiff "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden." *Celotex*, 477 U.S. at 322. Mere unsubstantiated or conclusory allegations are not sufficient to withstand summary judgment—the Plaintiff must present meaningful record evidence. *Little*, 37 F.3d at 1075.

## ARGUMENT

### I. Coleman's FLSA Claim Fails Because Getting Dressed and Undressed for Work Was Not Integral and Indispensable to His Principle Activities.

Coleman seeks compensation for the non-compensable activity of putting on and taking off his work clothes, not for any work he performed. He has no viable claim under the FLSA.

The FLSA "ensures that employees are paid for all hours *worked* in a given workweek, including overtime." *Gatewood v. Koch Foods of Mississippi, LLC*, 569 F. Supp. 2d 687, 591 (S.D. Miss. 2006) (emphasis added). The FLSA, however, does not define the terms "work" or "workweek," and broad interpretation of those terms by the Supreme Court led Congress to enact

7

the "Portal-to-Portal Act." *Sandifer v. U.S. Steel Corp.*, 571 U.S. 220, 225 (2014). The Portal-to-Portal Act limited compensable time by excluding:

> activities which are preliminary to or postliminary to [the] principal activity or activities [that an employee is employed to perform], which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities.

*Id.* (quoting 61 Stat. 87, 29 U.S.C. § 254(a)).

"The [Supreme] Court has interpreted the term 'principal activity or activities' in the Portal-to-Portal Act to include all activities that are an 'integral and indispensable part of the principal activities.'" *Bridges v. Empire Scaffold, L.L.C.*, 875 F.3d 222, 225-26 (5th Cir. 2017) (quoting *Integrity Staffing Solutions, Inc. v. Busk*, 135 S. Ct. 513, 517 (2014)). An activity is "integral and indispensable" if it "is an intrinsic element of those activities and one with which the employee cannot dispense if he is to perform his principal activities." *Id.* (quoting *Busk*, 135 S. Ct. at 517). In *Busk*, the Supreme Court further clarified the issue by stating that "[t]he integral and indispensable test is tied to the productive work that the employee is *employed to perform*." 135 S. Ct. at 519 (emphasis in original). Thus, many activities are not "work", and thus not compensable under the FLSA, even though they may be tangentially related to job duties. *Sandifer v. U.S. Steel Corp.*, 571 U.S. 220, 225 (2014).

For example, in *Busk*, the Supreme Court held that required security screenings were not integral and indispensable to warehouse employees' work of retrieving and packing products for shipment. *Busk*, 135 S. Ct. at 515, 518-19. Therefore, the time was not compensable as a matter of law. *Id.* In the present case, the time that Coleman may have decided to spend before and after his shift slipping on or off various clothing items of his choosing also is not compensable. Indeed, the employer in *Busk* required the security screenings, which made employees remove items from their clothes such as wallets, keys, and belts and pass through medical directors

8

before and after every shift. *Id.* at 515. Even though the additional activity was required to take place after each shift, the Court held the time associated with it was not compensable because it was not integral and indispensable to the productive work the employees were employed to perform. *Id.* at 519. Here, Coleman simply decided to put on and take off a few additional pieces of clothing that he stored in his locker at work and that he wore for his own comfort. That is not compensable.

Moreover, when an employee's clothes can be worn to and from work, putting the clothes on and taking them off is not integral and indispensable, and therefore, not compensable. *See Llorca v. Sheriff, Collier Cty., Fla.*, 893 F.3d 1319, 1324-25 (11th Cir. 2018). In fact, *Llorca* went well beyond excluding just clothing from compensation. The plaintiffs were former sheriff's deputies who alleged that they should have been paid for time spent putting on and taking off their uniforms: duty belt, radio, pepper mace, baton strap, magazine pouch, flashlight, handcuffs, holster, and ballistics vest. *Id.* at 1322. The officers put on all of the items at home before work. The Eleventh Circuit rejected the officers' claim, holding that "the mere fact that the deputies must go through the activity of donning and doffing the gear in order to have it available when they are on duty does not make the donning and doffing process an intrinsic element of law enforcement." *Id.* at 1324-25. The Court further explained that "the fact that the deputies need their protective gear in order to perform their principal activities is insufficient to establish that the donning and doffing process is an intrinsic part of their principal law enforcement duties." *Id.*

*Llorca* is consistent with the Department of Labor's ("DOL") regulatory interpretations, as well as the holdings of numerous courts. The DOL's May 31, 2006 Memorandum states that "[i]t is our longstanding position that if employees have the option and the ability to change into the required gear at home, changing into that gear is not a principal activity, even when it takes

9

place at the plant." Wage and Hour Adv. Memo. No. 2006-2 (May 31, 2006); *see also Labriola v. Clinton Entmt. Mgmt., LLC*, No. 15-C-4123, 2017 WL 1150989, *12 (N.D. Ill. Mar. 28, 2017) (exotic dancers were not entitled to compensation because they could change clothes and put on make-up prior to arriving at work); *Alford v. Perdue Farms, Inc.*, No. 5:07-cv-87 (CAR), 2008 WL 879413, at * (M.D. Ga. Mar. 28, 2008) (plaintiffs were not entitled to compensation for time spend putting on hair nets, beard nets, goggles, ear plugs, boots, or bump caps because they constituted "generic personal gear" that could be brought from home). Similarly, Coleman is not entitled to compensation for the time spent putting on or taking off clothing he chose to wear while working at the DC because he could put the clothing on at home and take it off there too.

For these reasons, the Court should enter summary judgment on Plaintiff's purported donning and doffing claim. Coleman is not entitled to compensation for the time he spent getting dressed and undressed.

## II. The DC's CBAs Do Not Require Compensation For Getting Dressed and Undressed, So They Preclude Coleman's Claim.

Defendants are entitled to summary judgment on Coleman's FLSA claim for an additional, independent reason. Coleman's union did not negotiate for employees to be paid for getting dressed or undressed for work.

In 1949, Congress amended the FLSA "to address the conduct [of] . . . changing clothes and washing—by adding [29 U.S.C. § 203(o)]." *Sandifer*, 571 U.S. at 226. Section 203(o) specifically provides:

> In determining for the purposes of [the minimum-wage and maximum-hours sections] of this title the hours for which an employee is employed, there shall be excluded any time spent in changing clothes or washing at the beginning or end of each workday which was excluded from measured working time during the week involved by the express terms of or by custom or practice under a bona fide collective-bargaining agreement applicable to the particular employee.

29 U.S.C. § 203(o). "Simply put, the statute provides that the compensability of time spent changing clothes or washing is a subject appropriately committed to collective bargaining." *Sandifer*, 571 U.S. at 226. Accordingly, this Court has held that "when employees and union representatives are conclusively aware of the facts surrounding compensation policies for changing clothes at the beginning and end of each workday, and reach an agreement under a CBA that does not compensate employees for the time," the company may point to the CBA as a defense. *Gatewood*, 569 F. Supp. 2d at 700; *see also Allen*, 593 F.3d at 457 ("Thus, as long as there was a company policy of non-compensation for time spent changing for a prolonged period of time—allowing the court to infer that the union had knowledge of and acquiesced to the employer's policy—and a CBA existed, the parties need not have explicitly discussed such compensation when negotiating the CBA.").

In addition, in *Sandifer*, Justice Scalia explained that "'clothes' denotes *items that are both designed and used to cover the body and are commonly regarded as articles of dress*." 570 U.S. at 227 (emphasis in original) (internal citations omitted). The Supreme Court held that this definition "encompasses the entire outfit that one puts on to be ready for work." *Id.* at 231. There were twelve items at issue in *Sandifer*, and the Court found that nine of them were considered "clothing:" (1) a flame-retardant jacket; (2) a pair of pants; (3) a hood; (4) a hard hat; (5) a snood; (6) wristlets; (7) work gloves; (8) leggings; and (9) metatarsal boots. *Id.* at 233. The only non-clothing items were (1) safety glasses; (2) earplugs; and (3) a respirator. *Id.*

In this case, the items at issue are: (1) either pants and a jacket (or a set of coveralls); and (2) a skull cap. (Coleman Dep. ¶¶ 21:10-24:3, Ex. C) They are clothing. There were two CBAs in place during Coleman's employment at the DC. (CBA, Ex. F; CBA, Ex. G) Neither provides that employees will be paid for time spent putting their clothes on before their shift or taking their clothes off after their shift. Since the Union did not negotiate for the DC's employees to be

11

paid for the time spent changing in and out of clothing before and after his paid shifts, Coleman's donning and doffing claim is precluded by § 203(o), and the Court should grant Defendants' Motion for Summary Judgment on this additional ground.

## CONCLUSION

Coleman is not entitled to be paid for putting on his clothes before work and taking them off after work. He could wear clothing of his own choosing and he was permitted to wear his clothes to and from work, so the activity was not integral and indispensable to his job duties. Also, Coleman's labor union did not negotiate for the time to be paid. In addition, Coleman conceded his claim for retaliation under the FLSA as mistaken. For these reasons, Coleman is unable to recover under his FLSA claims as a matter of law, and Defendants respectfully request that the Court enter judgment against Coleman on his claims in Counts II and III in the Amended Complaint.

This the 20th day of February, 2019.

        Respectfully submitted,

        KOCH FOODS OF MISSISSIPPI, LLC AND
        KOCH MEAT CO., INC.

        By their Attorneys,

        BAKER, DONELSON, BEARMAN, CALDWELL
        & BERKOWITZ, PC

        */s/Scott W. Pedigo*
        SCOTT W. PEDIGO

Scott W. Pedigo (spedigo@bakerdonelson.com)
D. Sterling Kidd (skidd@bakerdonelson.com)
R. Christopher White (rcwhite@bakerdonelson.com)
Baker, Donelson, Bearman,
   Caldwell & Berkowitz, P.C.
100 Vision Drive, Suite 400
Jackson, MS 39211

## **CERTIFICATE OF SERVICE**

On February 20, 2019, I electronically transmitted a true and correct copy of the foregoing document to the Clerk of Court for filing using the CM/ECF system, which will send notification of such filing to all counsel of record.

                                             */s/ Scott W. Pedigo*
                                             SCOTT W. PEDIGO

4828-4474-4836
2016061-000217